UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IAN BURKE,

                                 **Plaintiff,**

  vs.                                                   5:17-CV-157
                                                             (MAD/DEP)

**THE BOARD OF EDUCATION OF THE AUBURN
ENLARGED CITY SCHOOL DISTRICT,**

                                 **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**O'HARA, O'CONNELL & CIOTOLI**      **STEPHEN CIOTOLI, ESQ.**
7207 East Genesee Street
Fayetteville, New York 13066
Attorney for Plaintiff

**FERRARA FIORENZA PC**              **JEFFREY M. LEWIS, ESQ.**
5010 Campuswood Drive
East Syracuse, New York 13057
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Plaintiff commenced this action on February 13, 2017, asserting claims pursuant to 42 U.S.C. § 1983 and New York Executive Law § 296, arising out of his termination from his tenured teaching position at the Auburn Enlarged City School District. The complaint alleges that by failing to provide Plaintiff a meaningful hearing prior to his termination, Defendant deprived him of a protected property interest without due process of law. Plaintiff also alleges that Defendant unlawfully abrogated Plaintiff's protected liberty interest in his good name and reputation without due process of law. Finally, Plaintiff alleges under New York and Federal law

that Defendant's actions were based on impermissible discrimination and retaliation related to his disability.

Currently pending before the Court is Defendant's motion for summary judgment, which Plaintiff has opposed. *See* Dkt. No. 19 & 20. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

Plaintiff began his employment as a tenured teacher in the Auburn Enlarged City School District on September 1, 2006. Dkt. No. 19-1 at ¶ 4. On or about December 18, 2012, the District placed Plaintiff on paid administrative leave to investigate an incident where a student alleged that Plaintiff referenced the "castration" of another student with an X-ACTO knife during one of Plaintiff's classes. *See* Dkt. No. 20-11 at ¶ 5.[1] Approximately two days later, on December 20, 2012, the School District received an application from Plaintiff for paid leave pursuant to the Family Medical Leave Act, which was approved and set to expire in March 2013. *See* Dkt. No. 19-1 at ¶ 6. On March 6, 2013, the School District requested an examination in accordance with New York Education Law § 913 to evaluate Plaintiff's fitness to return to duty, which Plaintiff complied with. *See id*. at ¶ 7. This evaluation recommended in part that "[p]robably [Plaintiff]

---

[1] Plaintiff denies this fact in his response, because this investigation was "based only on the report of one student." This response, however, does nothing to refute the facts as stated by Defendant. Dkt. No. 20-11 at ¶ 5; Dkt. No. 19-1 at ¶ 5. The Court also notes at this juncture that Plaintiff cites multiple times to the Complaint as support for assertions that are outside his personal knowledge and otherwise unsupported by citations to the record. The Court considers these assertions unsupported and does not rely on them in this decision. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("Although the mere allegation of the existence of [a fact] would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment [, which] is designed to pierce the pleadings [and] flush out those cases that are predestined to result in a directed verdict").

may have to give rest to brain and gradually increase working hours - to [follow-up] with [Plaintiff's doctor] . . . ." *Id*. at ¶ 8.

About two months later, on May 15, 2013, Jeffrey Pirozzolo, the then-District Assistant Superintendent of Personnel, sent a letter to Plaintiff directing that Plaintiff contact him about the status of Plaintiff's leave of absence, and requesting updated medical documentation concerning Plaintiff's medical condition. Dkt. No. 19-1 at ¶ 9. This letter also referenced a voicemail left with Plaintiff on May 10, 2013, also concerning updated medical documentation. *Id*. Subsequently, in a letter dated May 29, 2013, Pirozzolo informed Plaintiff that the Board had met on May 14, 2013, and had approved his leave of absence "until released by your physician." Dkt. No. 20-11 at ¶ 10. Two days later, Pirozzolo sent a letter providing "reasonable assurance" to Plaintiff that he would perform services for the School District in the capacity of a technology teacher for the 2013-2014 school year. *Id*.

Plaintiff was then directed, by letter dated June 14, 2013, to attend a meeting with the School District on June 21, 2013, regarding Plaintiff's leave of absence, health insurance, and employment status. Dkt. No. 19-1 at ¶ 10. At this meeting, Plaintiff was again directed to provide updated medical documentation verifying that he was fit to return to duty. *Id*. at ¶ 11. On July 19, 2013, the School District sent another letter to Plaintiff, advising him that he must provide the District with medical documentation from his physician that he was "physically and mentally capable of returning to work" and that if he failed to do so, he will be considered to have abandoned his position, which might subject him to termination of his employment. *Id*. at ¶ 12. Plaintiff did not provide the requested updated medical documentation before the start of the

2013-2014 school year, and did not report to work. *Id*. at ¶ 13.[2]  The School District then sent a letter on September 9, 2013, advising Plaintiff that it was recommending to Defendant (the Board of Education) that Plaintiff be terminated for abandonment of his position. *Id*. at ¶ 14.  On September 10, 2013, Defendant terminated Plaintiff's employment with the School District during a public meeting. *Id*. at ¶ 15.  The School District sent Plaintiff a letter detailing this decision on September 16, 2013. *Id*. at ¶ 16.  Plaintiff, however, did not receive either of the letters mailed in September, and was not present for the September 10, 2013 meeting.  Dkt. No. 20-11 at ¶ 14.  Plaintiff remained in communication with the Teacher's Association concerning his job throughout the 2013-2014 school year.  Dkt. No. 20-11 at ¶ 13.

### III. DISCUSSION

**A.    Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

---

[2] Plaintiff denied this statement of fact, citing to several medical records and letters from his doctor. *See* Dkt. No. 20-11 at ¶ 13.  However, nearly all of these exhibits are dated before the March 6, 2013, the date of the examination ordered by the School District, and thus are not relevant to the School District's subsequent requests for updated medical records starting in May 2013. *See* Dkt. Nos. 1-2, 1-5, 1-6, 1-7.  While there is one treatment note from October 2, 2014, it too is irrelevant because it is unrelated to the time period at issue. *See* Dkt. No. 1-7 at 6.

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     New York Executive Law § 296 Claims**

Plaintiff's fourth and fifth causes of action for workplace discrimination and retaliation were brought under New York Executive Law § 296. In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment Plaintiff, indicates that he is withdrawing these claims. *See* Dkt. No. 20 at 8. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claims brought under New York Executive Law § 296 is granted.

**C.     Statute of Limitations for § 1983 Claims**

Defendant moves for summary judgment on the ground that Plaintiff's first, second, and third causes of action brought under 42 U.S.C. § 1983 are time barred. Claims under § 1983 are governed by the three-year statute of limitations for personal injury actions under New York State law. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted). While state law determines the statute of limitations, "'[f]ederal law determines when a section 1983 cause of action accrues, and we have ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of

his action.'" *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). When determining the timing of accrual in discrimination claims, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original). Therefore, "'the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.'" *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (quoting *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985)).

Defendant asserts that Plaintiff had notice of his termination at the very latest by December 2013, which is when the district received notice that Plaintiff applied for unemployment insurance benefits. Plaintiff, on the other hand, asserts that notice should be measured from Spring 2014, when the President of the District's Teacher's Union ceased communication with Plaintiff concerning his efforts to return to his position. However, Plaintiff does not dispute that he applied for unemployment insurance benefits during or before December 2013, and has not provided any cognizable reason for why he would be applying for unemployment insurance benefits without at least some knowledge of his termination. Notice "does not require the plaintiff's awareness of all consequences of an action, but only knowledge 'that he is suffering from a wrong for which damages may be recovered in a civil action.'" *Kneitel v. Silvery*, No. 15CV6811, 2018 WL 526486, *3 (E.D.N.Y. Jan. 22, 2018) (quoting *Lawson v. Rochester City Sch. Dist.*, 446 Fed. Appx. 327, 329 (2d Cir. 2011)). For those reasons, the Court finds that Plaintiff had notice of his termination by December 2013. Therefore, absent tolling, the statute of limitations for Plaintiff's § 1983 claims expired in December 2016; and, because Plaintiff did not commence this action until February 13, 2017, these claims are untimely.

6

### D. Tolling

Plaintiff contends that the statute of limitations was tolled from late 2013 through the beginning of 2014 under C.P.L.R. § 208 because he was suffering from a qualifying disability. *See* Dkt. No. 20 at 19-20.

Tolling of the statute of limitations for § 1983 claims is governed by the state's tolling rules. *See Wallace*, 549 U.S. at 394. Specifically, C.P.L.R. § 208 allows the statute of limitations to be tolled where "a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues." N.Y. C.P.L.R. § 208 (McKinney 2018). New York construes "insanity" narrowly, extending the toll "to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548 (1982); *see also La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 99 (2d Cir. 2014). "Courts have noted that the statute 'speaks in terms of insanity, not merely mental illness,' and 'apathy, depression, posttraumatic neurosis, psychological trauma and repression therefrom or mental illness alone have been held to be insufficient to invoke the [insanity] toll.'" *La Russo*, 747 F.3d at 99 (citations omitted).

Plaintiff asserts that starting in 2013, the serious mental condition resulting from his accident and the adverse treatment by the School District rendered him insane within the meaning of C.P.L.R. § 208. To support these findings, Plaintiff claims that he received a diagnosis of traumatic brain injury after his accident; that his parents were granted Power of Attorney over his assets; that he received assistance from his family in paying bills, providing food, and other daily hygienic tasks; that he was admitted into a psychiatric unit in May 2014 for his own safety; and that he experienced severe suicidal thoughts and debilitating depression. *See* Dkt. No. 20-11 at ¶ 23. Defendant responds by asserting, *inter alia*, that during the relevant time period Plaintiff

attended meetings with representatives of the Auburn Teachers Association; applied for unemployment insurance benefits; opened a checking account; filled out paperwork seeking assistance under the Home Energy Assistance Program; competed in and won two motorcycle drag races; applied for six jobs; and executed a contract to sell his house. *See* Dkt. No. 19-1 at ¶ 24-37. Plaintiff has either admitted all of these facts, or failed to provide a citation to evidence in the record that supports his denial.

Even resolving all ambiguities and drawing all reasonable inferences in Plaintiff's favor, the Court finds that he was not insane within the meaning of § 208. Plaintiff has not demonstrated that he had "an over-all inability to function in society," especially in light of the undisputed evidence submitted by Defendant. *McCarthy*, 55 N.Y.2d at 548. In particular, the Court notes Plaintiff's application for unemployment insurance benefits, his repeated communications with the School District's Teacher's Union, and his execution of a contract to sell his house as evidence of his ability to protect his legal rights, notwithstanding the seriousness of his traumatic brain injury and the resulting difficulty in functioning. *See Shonowsky v. City of Norwich*, No. 3:10-CV-0745, 2011 WL 4344028, *7 (N.D.N.Y. Apr. 18, 2011), report and recommendation adopted, 2011 WL 4344039 (N.D.N.Y. Sept. 14, 2011) ("One factor that the courts have found significant when addressing the applicability of tolling under section 208 is whether, and if so to what extent, a plaintiff has taken measures to protect his or her rights during the period at issue"). As to Plaintiff's psychiatric commitment, the Court notes that Plaintiff was admitted on May 2, 2014, to the inpatient psychiatric unit at Upstate University Hospital. *See* Dkt. No. 20-4 at 13-14. On May 5, 2014, Plaintiff was discharged at his own request. *See id.* This, without more, is insufficient to establish insanity within the meaning of § 208. *See Joseph*

*S. v. Hogan*, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008) ("New York law does not unequivocally apply a *per se* toll for psychiatric hospitalization").

As Defendant notes, in Plaintiff's unemployment insurance application, Plaintiff stated that he was able to start working immediately. *See* Dkt. No. 19-1 at ¶ 32. Further, between the Spring of 2014 and the Fall of 2016, Plaintiff applied for at least six jobs. *See id.* at ¶ 35. Although the Court does not doubt that Plaintiff was suffering from significant mental and physical impairments, the record before the Court clearly demonstrates that Plaintiff was not continuously unable to function in society as required to support the invocation C.P.L.R. § 208. *See LaRusso*, 936 F. Supp. 2d at 298-99 (citations omitted); *see also Callahan v. Image Bank*, 184 F. Supp. 2d 362, 363-64 (S.D.N.Y. 2002) (holding that allegations that the plaintiff was "unable to work or care for herself," "unable to leave her home unescorted," "experienced severe side effects from medication and black-outs ... experienced a period of hospitalization ... arising from [ ] depression," and suffered "from suicidal ideation" were insufficient to satisfy the standard for tolling under C.P.L.R. § 208).

Based on the foregoing, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.

### IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 19) is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated: November 7, 2018
      Albany, New York

```
Mae A. D'Agostino
U.S. District Judge
```